IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-02891-PAB-MJW

DAVID M. SHELTON and
DESIGNSENSE, INC.,

    Plaintiffs,

v.

MRIGLOBAL, a non-profit corporation, formerly Midwest Research Institute
its National Renewable Energy Laboratory Division, and
ALLIANCE FOR SUSTAINABLE ENERGY, LLC,

    Defendants.

---

## ORDER

---

This matter is before the Court on defendants' motion to dismiss [Docket No. 34] plaintiff's second amended complaint [Docket No. 25]. The motion is fully briefed and ripe for disposition.

The factual context from which plaintiffs' claims arise is difficult to discern from the face of the second amended complaint. In addition to the complaint, however, the Court has also, to the extent necessary to resolve the present motion, referred to documents that are cited in and central to plaintiff's complaint. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). Based on this review, the Court construes the complaint to allege the following: Plaintiff DesignSense, Inc. entered into a subcontract with Midwest Research Institute, now defendant MRIGlobal ("MRI"), relating to the U.S. Department of Energy's operation and management of the National Renewable Energy Laboratory in Golden, Colorado.

Plaintiffs allege that, pursuant to that subcontract, they were to "provide design-build support services including providing to MRI a derivative work of it's [sic] copyrighted and proprietary 3PQ [Request for Proposal ("RFP")] structure."  Docket No. 25 at 5, ¶ 16. "The 3PQ RFP structure is a proprietary format developed by [plaintiff] David M. Shelton and licensed to DesignSense to create derivative works to assist owners like the Department of Energy to manage and control the design and build process for buildings."  Docket No. 25 at 5, ¶ 18.

Plaintiffs allege that defendants revealed the copyrighted "3PQ RFP structure" on the internet without proper attribution in violation of the Lanham Act and Copyright Act, thus invoking this Court's federal question jurisdiction.  See 28 U.S.C. § 1331. Defendants contend, and the Court agrees, that plaintiffs have failed to state plausible federal claims against defendants.[1]

Defendants interpret plaintiffs' Lanham Act claim as attempting to allege a violation of Section 43(a)(1)(A), which plaintiffs do not dispute.  Section 43(a)(1)(A) of

---

[1] In assessing whether plaintiffs' complaint states a claim for relief, the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff."  *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quotation marks and citation omitted).  At the same time, however, a court need not accept conclusory allegations.  *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002).  Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (omission marks, internal quotation marks, and citation omitted).  The "plausibility" standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible.  *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008). Furthermore, in addition to the complaint, the Court "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."  *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

the Lanham Act provides that

> [a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A). Here, plaintiffs' Lanham Act claim appears to turn largely on the allegation that defendants used a "derivative work" of their copyrighted material without proper attribution. *See* Docket No. 25 at 12, ¶ 58. The Lanham Act does not reach so far as to cover such alleged copyright violations. *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003) ("[R]eading the phrase 'origin of goods' in the Lanham Act in accordance with the Act's common-law foundations (which were *not* designed to protect originality or creativity), and in light of the copyright and patent laws (which *were*), we conclude that the phrase refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods.") (emphasis in original).[2]

---

[2]Plaintiffs attempt to distinguish *Dastar*, contending that it "held that when a Defendant took a creative work not subject to copyright in the public domain, copied it, made modifications, and then produced its own videotapes that the Defendant was the origin of the product and therefore could not be sued under the Lanham Act." Docket No. 42 at 13 (emphasis omitted). Plaintiffs cite no authority for such a cabined reading of the Supreme Court's decision. *Cf. Williams v. UMG Recordings, Inc.*, 281 F. Supp. 2d 1177, 1185 (C.D. Cal. 2003) ("[T]he Supreme Court's holding [in *Dastar*] did not depend on whether the works were copyrighted or not. . . . Rather, in being careful not to extend trademark protections, the Court noted that protection for communicative products was available through copyright claims. In fact, this protection would only be available if a valid copyright existed."); *MDM Group Associates, Inc. v. ResortQuest*

To the extent the complaint can be construed as contending that defendants misappropriated some other product that is distinguishable from plaintiffs' copyrighted material, plaintiffs fail to persuasively explain how defendants did so without permission. The subcontract granted defendants "unlimited rights" to "use, disclose, reproduce, prepare derivative works, distribute copies to the public, including by electronic means, and perform publicly and display publicly, in any manner, including by electronic means, and for any purpose whatsoever, and to have or permit others to do so." Subcontract, App. C-3, Clause 4(A)(8), Docket No. 34-5 at 31; *see* Subcontract, App. C-3, Clause 4(A)(3), Docket No. 34-5 at 30 (defining the "data" to which defendants have "unlimited rights" expansively to include "recorded information, regardless of form or the media on which it may be recorded" including "technical data and computer software"). Although plaintiffs contend that other agreements reached by the parties limited defendants' rights, plaintiffs' allegations in that regard are limited to the proper attribution of allegedly copyrighted material.

Turning to the copyright claim, plaintiffs allege that they hold a registered copyright in the "3PQ format." *See* Docket No. 25 at 17, ¶ 84; *see id.* at 5, ¶ 19 ("David M. Shelton has registered the 3PQ RFP structure with the United States Patent and Trademark office [sic] and has received Copyright no. TX 7-383-292 for 3PQ."); *see* Docket No. 34-7 (Copyright No. TX 7-383-292). To the extent plaintiffs contend that their "format" or "structure," i.e., some sort of process or set of ideas, is protected by

---

*Int'l, Inc.*, No. 06-cv-01518-PSF-KLM, 2007 WL 2909408, at *6 (D. Colo. Oct. 1, 2007) ("Under *Dastar*, then, the Lanham Act does not prohibit the conduct complained of here-that ResortQuest published materials describing the damage waiver policy that were substantially similar to MDM's [copyrighted] brochure without crediting MDM.").

copyright, their claim clearly fails. *See* 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.").

As for the registered expressive material, plaintiffs hold the right to reproduce the material and to create derivative works therefrom. *See* 17 U.S.C. § 106. Plaintiffs allege that defendants produced a derivative work that violated their copyright. *See* 17 U.S.C. § 101 ("A 'derivative work' is a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a 'derivative work'."). They fail, however, to allege any facts indicating how the language posted by defendants online is "substantially similar" to plaintiffs' copyrighted material.[3] *See Home Design Services, Inc. v. Starwood Const., Inc.*, 801 F. Supp. 2d 1111, 1118 (D. Colo. 2011) ("'Substantial similarity' is the operative term in infringement cases, meaning a determination of 'whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the

---

[3]Plaintiffs allege that defendants used the 3PQ RFP that plaintiffs prepared for them pursuant to the subcontract. That the 3PQ may have "derived" from the "format" or "system" employed by plaintiffs does not answer the question of whether the resulting 3PQ RFP was a "derivative" work of plaintiffs' registered copyright. Plaintiffs do not allege that such is the case.

plaintiff's protectible expression by taking material of substance and value.'") (quoting *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1288 (10th Cir. 1996); *Atkins v. Fischer*, 331 F.3d 988, 993 (D.C. Cir. 2003) (stating that the Copyright Act "mandate[s] that derivative work that is 'substantially similar' to the original work upon which it is based is an infringement"); *Micro Consulting, Inc. v. Zubeldia*, 813 F. Supp. 1514, 1531 (W.D. Okla. 1990) ("[L]ike any other accused work, a derivative work does not infringe unless it has been substantially copied from the preexisting work . . . . Thus, substantial similarity is again the key to finding a [copyright] violation . . . ."). While the "3PQ RFP structure" may have been derived by some process or format originating with plaintiffs, plaintiffs fail to allege that it is similar to any material subject to copyright protection.[4] For these reasons, the Court will dismiss plaintiffs' two federal causes of action.[5]

---

[4] Defendants argue that the terms of the subcontract clearly grant them unlimited rights to use of the "3PQ RFP structure," thus preventing plaintiffs from succeeding on their copyright claim. Because of the aforementioned pleading failures, the Court need not reach this issue, which is also central to plaintiffs' state law causes of action.

[5] In their response to defendants' motion to dismiss, plaintiffs request, in the event the Court concludes that plaintiffs failed to state a claim, that the Court grant them leave to amend their complaint. The Local Rules of this District are clear that a "motion shall not be included in a response or reply to the original motion," but rather "shall be made in a separate paper." D.C.COLO.LCivR 7.1C; *see Calderon v. Kansas Dep't of Social and Rehabilitation Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999) ("We have recognized the importance of Fed. R. Civ. P. 7(b) and have held that normally a court need not grant leave to amend when a party fails to file a formal motion."). In any event, plaintiffs failed to file a proposed amended complaint or otherwise indicate how they would be able to cure the pleading deficiencies discussed above. *See Blythe v. Southwest Airlines Co.*, 2010 WL 2473863, at *3 (10th Cir. June 18, 2010) (concluding that plaintiff's request, in response to a motion to dismiss, for sixty days to amend her complaint failed to "'give adequate notice to the district court and to the opposing party of the basis of the proposed amendment'" and, therefore, "the district court correctly denied her leave to amend her complaint") (quoting *Calderon*, 181 F.3d at 1186-87).

Plaintiffs also assert a number of state law claims against defendants, but do not allege, and the allegations do not support a finding, that this Court can exercise diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).  Because the federal claims will be dismissed, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.  *See* 28 U.S.C. § 1367(c)(3); *see also Bauchman v. West High School*, 132 F.3d 542, 549 (10th Cir. 1997) ("If federal claims are dismissed before trial, leaving only issues of state law, 'the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.'") (quoting *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988)); *cf. Brooks v. Gaenzle*, 614 F.3d 1213, 1230 (10th Cir. 2010) ("'Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary.'") (quoting *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995)).

For the foregoing reasons, it is

**ORDERED** that defendants' motion to dismiss [Docket No. 34] is GRANTED.  It is further

**ORDERED** that plaintiffs' Lanham Act and Copyright Act claims are dismissed for failure to state a claim.  It is further

**ORDERED** that, pursuant to 28 U.S.C. § 1367(c)(3), plaintiffs' state law claims are dismissed without prejudice.  It is further

**ORDERED** that this case shall be closed in its entirety.

---

Therefore, the Court has disregarded that request.

DATED September 28, 2012.

                                        BY THE COURT:

                                        s/Philip A. Brimmer
                                        PHILIP A. BRIMMER
                                        United States District Judge